UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| OAKLAND YACHT CLUB, a California non-profit corporation,<br><br>                Plaintiff,<br><br>   v.<br><br>The Vessel ULTIMATUM, Official Number 1047526, her masts, sails, engine and appurtenances, *in rem.,*<br><br>                Defendant. | No. C 14-00480 CW (LB)<br><br>**REPORT AND RECOMMENDATION RE: PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AND ORDER FOR FINAL SALE**<br><br>[Re: ECF No. 20] |

## INTRODUCTION

Plaintiff Oakland Yacht Club filed this admiralty and maritime action *in rem* against Defendant The Vessel Ultimatum, seeking to foreclose a maritime lien under the Federal Maritime Lien Act, 46 U.S.C. §§ 31342, 31325(d)(1). *See* Complaint, ECF No. 1.[1] Oakland Yacht Club filed a motion for default judgment and an Order for Final Sale, which the district court referred to the undersigned for a Report and Recommendation. *See* Motion for Default Judgment, ECF No. 20; Order of Reference, ECF No. 23. The court held a hearing on May 8, 2014 and for the reasons below, the court **RECOMMENDS** the district court **GRANT** the motion.

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

**STATEMENT**

Defendant The Vessel Ultimatum is a U.S. documented vessel, Official Number 1047526, known as a J-105 sloop. Complaint, ECF No. 1, ¶ 2. Plaintiff Oakland Yacht Club is a California non-profit corporation with its principal place of business in Alameda, California. *Id.* ¶ 2. In May 2010, Mustafa Gunan was a member of Oakland Yacht Club and an owner of the Ultimatum. Complaint ¶ 4. Gunan entered into a contract with Oakland Yacht Club under which the club would provide a slip to berth the Ultimatum, electrical power to the vessel, and the use of a dock box adjacent to the boat. *Id.* Since then, Gunan berthed the Ultimatum in a slip in Oakland Yacht Club's marina. *Id.* Because the Ultimatum is more than 35 feet long (as measured by Oakland Yacht Club rules) Gunan was charged rent for berthing a 36-foot boat. *Id.* He paid this rent in 2010, 2011, and part of 2012. *Id.*

In December 2012, Oakland Yacht Club terminated Gunan's membership and the berthing contract for non-payment of slip rental fees and other charges. *Id.* ¶5.

Gunman still has not removed the Ultimatum from its berth at Oakland Yacht Club. *Id.* ¶ 6. He has not paid any of the fees for berth rental, electrical power, or dock box rental since January 2013, even though Oakland Yacht Club has continued to provide berthing, electrical power, and use of a dock box. *Id.* ¶¶ 6-7. As alleged in the complaint, the fair rental value of the slip the Ultimatum occupies for a vessel that does not belong to an Oakland Yacht Club member and that is not subject to a slip rental agreement with a term of at least a month is $1 per foot of measured length per day. *Id.* ¶ 7. In the case of the Ultimatum, this comes to $36 per day. *Id.* The fair value of the dock box is $2.50 per month. *Id.* The electric power charges are based on actual cost of metered usage. *Id.* The fair value of the berthing, electrical power and dock box provided to the Ultimatum from January 1, 2013 to January 31, 2014 is $14,318.90. *See* Complaint ¶ 8. Oakland Yacht Club provides a declaration from its General Manager with an attached spreadsheet that corroborates the fair rental values and accrued charges as alleged in the Complaint. *See* Doering Decl. Supp. Motion Ex. A, ECF No. 20-1.

**II. PROCEDURAL HISTORY**

Oakland Yacht Club filed this *in rem* action on January 31, 2014. See ECF No. 1. On February

7, 2014, the district court approved Oakland Yacht Club's proposed warrant of arrest, and it ordered the issuance of a warrant for arrest of the Ultimatum. *See* ECF Nos. 6, 9. The same day, the court granted Oakland Yacht Club's Application for Appointment of Substitute Custodian, appointed Oakland Yacht Club as the substitute custodian, and ordered that if the U.S. Marshal for the Northern District of California arrests the Ultimatum it should immediately transfer custody of the boat to Oakland Yacht Club. *See* ECF Nos. 8, 10. Also on February 7, the Clerk of the Court issued the warrant to the U.S. Marshal. *See* Warrant for Arrest, ECF No. 11.

On February 13, 2014, the U.S. Marshal arrested the Ultimatum and turned over custody to Oakland Yacht Club. *See* Warrant Return, ECF No. 14. Also on February 13, 2014, in order to satisfy the service requirements of 46 U.S.C. § 31326(d)(1), the Oakland Yacht Club mailed copies of pleadings and documents from this proceeding to Mustafa Gunan and Sevtap Mimar at 15909 Peacock Avenue, Sunnyvale, CA 94087, their last known address. *See* Proof of Service, ECF No. 13-1. Specifically, Oakland Yacht Club mailed copies of the Notice of Arrest of Vessel, the Warrant, the Order for Issuance of Warrant, the Order Appointing Substitute Custodian, the Complaint, and the Oakland Filing Procedures. *Id.*

Thereafter, Oakland Yacht Club published a Notice of Arrest of Vessel in the San Francisco Daily Journal, in compliance with Admiralty Local Rule 4-2(a) and Civil Local Rule 77-4(c) and also filed the Proof of Publication, as required by Admiralty Local Rule 4-2(b).

On March 4, 2014, Oakland Yacht Club moved for entry of default, ECF No. 17, which the Clerk of Court entered on March 6, 2014, ECF No. 18. On March 10, 2014, the district court ordered Oakland Yacht Club to file a motion for Default Judgment within 30 days. Order Re Default, ECF No. 19. Oakland Yacht Club filed the pending motion for default judgment on March 12, 2014, Motion, ECF No. 20, and the district court referred it to a magistrate judge for findings and a recommendation. Motion, ECF No. 23. The Oakland Yacht Club filed a certificate of service that is served a copy of its motion and supporting papers on Mr. Gunan and Ms. Minar. *See* ECF No. 25. The undersigned held a hearing on the motion on May 8, 2014.

**ANALYSIS**

**I. LEGAL STANDARD**

Before assessing the merits of a default judgment in an *in rem* action brought pursuant to 46 U.S.C. § 31342(a), a court must confirm that it has subject matter jurisdiction over the case and *in rem* jurisdiction over the defendant, as well as ensure the adequacy of service upon those who may have an interest in the defendant. *See Crescent City Harbor Dist. v. M/V Intrepid,* No. 08–1007–JCS, 2008 WL 5211023, at *2–3 (N.D. Cal. Dec.11, 2008). The court then may grant a default judgment if the requirements in Admiralty Local Rule 6–2(b) have been met: "(1) Notice has been given as required by Admir. L.R. 6–1(a)(2) and (b)(2); (2) The time to answer has expired; and (3) No one has filed a verified statement of right of possession or ownership interest in the property." N.D. Cal. Admiralty L.R. 6–2(b).

Under Federal Rule of Civil Procedure 55(b)(2), a plaintiff may apply to the district court for – and the court may grant – a default judgment against a defendant who has failed to plead or otherwise defend an action. *Draper v. Coombs*, 792 F.2d 915, 925 (9th Cir. 1986). Whether to enter a judgment lies within the court's discretion. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002). Still, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *Draper* 792 F.2d at 924-25. Default judgments generally are disfavored because "cases should be decided on their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). Where the clerk has already entered default, the court must take as true the factual allegations of the complaint and other competent evidence submitted. *See Fair Hous. of Marin v. Coombs*, 285 F.3d 899, 906 (9th Cir. 2002); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987).

In deciding whether to enter a default judgment, the court should consider: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute about the material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471-72.

## II. THE COURT HAS JURISDICTION OVER THIS ACTION AND DEFENDANT

The district court has jurisdiction over this action under 28 U.S.C. § 1333 which vests district courts with original jurisdiction over "any civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333. An *in rem* action may be brought to enforce any maritime lien, or whenever a statute of the United States provides for a maritime action to be brought *in rem.* Fed. R. Civ. P. Supp. C(1). Here, Oakland Yacht Club seeks to enforce a maritime lien under the Federal Maritime Lien Act, 46 U.S.C. § 3142. Accordingly, the Court has subject matter jurisdiction over this action. *See Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 305 F.2d 913, 918-23 (9th Cir. 2002) (holding that the Maritime Lien Act provides a statutory basis for the exercise of a district court's admiralty jurisdiction). The court has *in rem* jurisdiction over the Ultimatum because the vessel is located in the Northern District of California, *see* Complaint ¶ 2, it was "arrested pursuant to maritime process," and "the warrant[] w[as] successfully served," ECF No. 13-1. *See Ventura Packers*, 424 F.3d at 858.

## III. DEFENDANTS HAVE FULFILLED THE NOTICE REQUIREMENTS

The next issue is whether service of process is adequate. Federal Rule of Civil Procedure Supplemental Rule C requires that "[i]f the property that is the subject of the action is a vessel or tangible property on board a vessel, the warrant and any supplemental process must be delivered to the marshal for service." Fed. R. Civ. P. Supp. C(3)(b)(i). Supplemental Rule C(4) also mandates that a plaintiff "give public notice of the action and arrest [of the vessel] in a newspaper designated by court order and having general circulation in the district . . . . The notice must specify the time under Rule C(6) to file a statement of interest in or right against the seized property and to answer." Fed. R. Civ. P. Supp. C(4); *see* N.D. Cal. Admiralty L.R. 4–2(a) (providing further details needed in publication notice); *see also* N.D. Cal. Civil L.R. 77–4(b) (listing appropriate newspapers for publication notice). For actions in which a plaintiff seeks a default judgment, Local Admiralty Rule 6–1(a)(2) also requires that due notice of the action and arrest of the property has been given as follows:

   i. By publication as required in Fed. R. Civ. P. Supp. C(4);

   ii. By service upon the master or other person having custody of the property;

C 14-00480 CW (LB)
REPORT AND RECOMMENDATION
5

> and
>
> iii. By service under Fed. R. Civ. P. 5(b) upon every other person who has not appeared in the action and is known to have an interest in the property.

N.D. Cal. Admir. L.R. 6–1(a)(2).

Here, the court has reviewed the Proof of Publication and found that the notice complies with Federal Rule of Civil Procedure Supplemental Rule C(4) and the Civil and Admiralty Local Rules. *See* Proof of Publication, ECF No. 15. Oakland Yacht Club served process upon its general manager, who is authorized to accept service of process. *See* Process Return, ECF No. 16; Doering Decl. Supp. Motion for Entry of Default ¶ 1, ECF No. 17-1. Because Oakland Yacht Club is the court-appointed custodian of the Ultimatum, this satisfies Admiralty Local Rule 6-1(a)(2). Finally, Oakland Yacht Club served Mustafa Gunan and Sevtap Mimar in accordance with Federal Rule of Civil Procedure 5(b) by mailing a copy of the Verified Complaint and Notice of Arrest, among other documents, to Mustafa Gunan and Sevtap Mimar at their last known address. *See* Proof of Service, ECF No. 13-1; Doering Decl. Supp. Request for Entry of Default, ECF No. 17-1 (stating that Notice of Arrest was sent to Mustafa Gunan's last known address, that Sevtap Mimar is his wife, and that Oakland Yacht Club knows of no other persons or entities with an interest in the vessel Ultimatum). Accordingly, the court finds that proper service was made.

The court also finds that the three factors in Admiralty Local Rule 6-2(b) have been satisfied. First, as noted above, Oakland Yacht Club provided notice in accordance with Admiralty Local Rule 6-1(a)(2) and (b)(2). Second, no one has filed a verified statement of right or possession or ownership interest in the property. *See generally,* Docket. Third, the time to answer has expired. In an *in rem* action to enforce a maritime lien, "a person who asserts a right of possession or any ownership interest in the property that is the subject of the action must file a verified statement of right or interest . . . within 14 days after the execution of process or within the time that the court allows." Fed. R. Civ. P. Supp. C(6)(a)(i). "A person who asserts a right of possession or any ownership interest must serve an answer within 21 days after filing the statement of interest or Right." Fed. R. Civ. P. Supp. C(6)(a)(iv). Here, the U.S. Marshal executed the warrant on February 10, 2014. *See* Process Receipt, ECF No. 16. Because the time has passed for claimants to file a

C 14-00480 CW (LB)
REPORT AND RECOMMENDATION

6

verified statement of right or interest, there is no one who can file an answer. Accordingly, the court considers whether a default judgment is appropriate based on the *Eitel* factors.

## IV. THE *EITEL* FACTORS SUPPORT ENTERING DEFAULT JUDGMENT

### A. Possibility of Prejudice to Plaintiff

The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and whether such potential prejudice to the plaintiff militates in favor of granting a default judgment. *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1054 (N.D. Cal. 2010). As set forth in the Complaint, pursuant to its contract with Mustafa Gunan, Oakland Yacht Club provided necessaries to the Ultimatum, including berthing, electrical power, and use of a dock box. *See* Complaint ¶¶ 4-9. Oakland Yacht Club has been unable to recover the outstanding amounts owed for these services. *Id.* ¶¶ 6, 8. Thus, if the Court were to deny Plaintiff's Motion, Plaintiff would be unable to recover the costs incurred by Oakland Yacht Club and further delay in securing a judgment would only increase the chances that Plaintiff will be unable to recover such amount. Therefore, this factor favors entry of default judgment in the case.

### 2. Merits of Plaintiff's Substantive Claims and Sufficiency of Complaint

Under the second and third *Eitel* factors, the court considers the merits of the plaintiff's substantive claims and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471-72. After entry of default, well-pleaded factual allegations in the complaint regarding liability are taken as true, except as to damages. *See TeleVideo*, 826 F.2d at 917-18; *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). "However, a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV*, 503 F.3d at 854 (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (quotation marks omitted)).

Plaintiff asserts and seeks to foreclose a maritime lien against the Ultimatum under 46 U.S.C. § 31342 based on unpaid fees for berthing and a dock box, and electricity Oakland Yacht Club provided. In relevant part, 46 U.S.C. § 31342 provides:

(a) Except as provided in subsection (b) of this section, a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner–

    (1) has a maritime lien on the vessel;

1           (2) may bring a civil action in rem to enforce the lien; and

2           (3) is not required to allege or prove in the action that credit was given to the vessel.

3 (b) This section does not apply to a public vessel.

4 In order to establish a maritime lien for necessaries, a supplier must show: (1) that the goods or services were provided to the vessel; (2) that the goods or services were "necessaries"; (3) that the charges are reasonable in amount; and (4) that they were ordered by someone with the appropriate authority. *Belcher Co. of Ala. v. M/V Martha Mariner*, 724 F.2d 1161, 1164, (5th Cir.1984); *see also Int'l Seafoods of Alaska, Inc. v. Park Ventures, Inc.*, 829 F.2d 751, 753 (9th Cir. 1987); *Farwest Steel Corp v. Barge Sea Span 241*, 769 F.2d 620, 623 (9th Cir. 1985). Section 31301(4) states that "'necessaries' includes repairs, supplies, towage, and the use of a dry dock or marine railway[.]" 46 U.S.C. § 31301(4). "The list is not exhaustive, and in fact, modern admiralty jurisprudence interprets 'necessaries' broadly, as anything that facilitates or enables a vessel to perform its mission or occupation." *Ventura Packers,* 305 F.3d at 923. "The term 'necessaries' includes most goods or services that are useful to the vessel to keep her out of danger." *Id.*

Here, the Court finds that Oakland Yacht Club has made an adequate showing establishing the existence of a maritime lien under § 31342.

First, Oakland Yacht Club has sufficiently alleged and provided documentation that it provided berthing, electrical power, and use of a dock box to the Ultimatum. Complaint ¶¶ 4-9; Doering Decl. Supp. Motion for Default Judgment, ECF No. 20-1, ¶¶ 1-4, Ex. A. The Complaint, which is verified pursuant to Federal Rule of Civil Procedure Supplemental Rule C(2), the Doering Declaration, and the attached spreadsheet sufficiently establish that between January 1, 2013 and January 31, 2014, the Vessel incurred charges amounting to $14,323.65 (though Oakland Yacht Club requests only $14,318.90).

Second, the Court agrees with Plaintiff that these services were "necessaries" under § 31301(4). *See Crescent City Harbor District*, 2008 WL 5211023, at *3 (finding that wharfage is considered a necessary under maritime law); *Canton Port Servs. v. M/V Snow Bird,* 690 F. Supp. 2d 405, 408 (D. Md. 2010) (finding that docking services were necessaries); *Am. E. Dev. Corp. v. Everglades Marina, Inc.,* 608 F.2d 123, 125 (5th Cir. 1979) (recognizing that "[s]everal courts have imposed

1   maritime liens for docking, wharfage, or storage fees . . . .").

2   Third, the charges that Oakland Yacht Club seeks are reasonable and are of the type that can be
3   expected by a harbor providing berthing to a vessel over an extended period. *See Crescent City*
4   *Harbor Dist.,* 2008 WL 5211023, at *3.

5   Fourth, Mr. Gunan procured the services. *See* Complaint ¶ 9. Under 46 U.S.C. § 31341(a)(1), as
6   the owner of the vessel, Mr. Gunan is statutorily presumed to have authority to procure necessaries
7   for it.

8   Taken together, the court finds that Oakland Yacht Club has sufficiently established the
9   existence of a maritime lien under § 31342.

### C.  Sum of Money at Stake

The fourth *Eitel* factor analyzes the amount of money at stake in the action. *See Eitel*, 782 F.2d at 1471-72. When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged. *See id.* at 1472 (three-million dollar judgment, considered in light of parties dispute as to material facts, supported decision not to enter default judgment); *Tragni v. Southern Elec. Inc.*, No. 09-32 JF, 2009 WL 3052635, at *5 (N.D. Cal. Sept. 22, 2009); *RBS Washington*, 2010 WL 145097, at *3 (*citing Eitel*, 782 F.2d at 1472). Here, Oakland Yacht Club seeks $14,318.90, which represents the amounts owed for berthing, dock box rental, and metered electricity provided to the Ultimatum. Complaint, ECF No. 1. Oakland Yacht Club also seeks costs and reimbursement for expenses incurred while the Ultimatum is *in custodia legis*. *See* Motion at 6. The district court already awarded Oakland Yacht Club the latter expenses in the amount of $36 per day. *See* Order Appointing Substitute Custodian, ECF No. 10 at 2. Because the sum of money at stake is relatively small, this factor weighs in favor of default judgment.

### D.  Possibility of a Material Factual Dispute

The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the material facts surrounding the case. *Eitel*, 782 F.2d at 1471-72. Here, Oakland Yacht Club seeks to recover costs that are based on established rates. *See* Complaint ¶ 7. It also mailed copies of all the relevant documents in this proceeding to the Ultimatum's owners and published notification of arrest of the Vessel. Nevertheless, the owners failed to appear in this action. There is no indication that

UNITED STATES DISTRICT COURT
For the Northern District of California

there might be a disputed issue of material fact. Moreover, the issues are straightforward: whether the owners paid the charges and what the damages are. Thus, there is little likelihood of a dispute concerning the material facts in the Complaint. This factor, therefore, weighs in favor of default judgment.

### E. Whether Default Was the Result of Excusable Neglect

The sixth *Eitel* factor examines whether any interested party's failure to respond to the plaintiff's allegations was the result of excusable neglect. *Eitel*, 782 F.2d at 1471-72. There is no indication that failure to participate in this proceeding by Mustafa Gunan is due to excusable neglect. *See Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (default after proper service was not excusable neglect). As such this factor weighs in favor of granting default judgment.

### F. Strong Policy Favoring Decisions on the Merits

The final *Eitel* factor examines whether the policy of deciding a case based on the merits precludes entry of default judgment. *Eitel*, 782 F.2d at 1471-72. In *Eitel*, the Ninth Circuit cautioned that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. This policy, however, is not dispositive; rather, the court still has great latitude in exercising its discretion with regards to the relative weight of the remaining *Eitel* factors. *PepsiCo,* 238 F. Supp. 2d at 1177. Despite the policy of favoring decisions on the merits, default judgment is appropriate when a defendant refuses to litigate a case. Fed. R. Civ. P. 55(b); *see RBS Washington*, 2010 WL 145097, at *4. On balance, this factor weighs slightly against granting the motion for default judgment.

### G. Summary

Based on the foregoing analysis, the court finds that all but one of the *Eitel* factors weighs in favor of granting default judgment. The court, therefore, recommends that the district court grant Oakland Yacht Club's motion for default judgment against The Vessel Ultimatum, her masts, sails, engine, and appurtenances.

## IV. RELIEF SOUGHT

Oakland Yacht Club asks the court for the following relief: (1) damages in the amount of

$14,318.90, plus costs and *in custodia legis* expenses, (2) an order compelling the U.S. Marshal to sell the Ultimatum to pay the amount of the default, according to terms provided in Oakland Yacht Club's proposed order, and (3) an order that all claims against the proceeds of the sale must be made by intervention within 30 days after the confirmation of the sale. *See* Motion; Proposed Default Judgment Order, ECF No. 21; Proposed Order for Final Sale and Intervention, ECF No. 22.

The court finds that Oakland Yacht Club's request for $14,318.90 in damages, plus costs and *in custodia legis* expenses is appropriate and (as to the amount of the default judgment) sufficiently documented. The court **RECOMMENDS** the district court award Oakland Yacht Club $14,318.90, plus costs and *in custodia legis* expenses to be substantiated after the sale.

The court also finds that ordering the U.S. Marshal to sell the Ultimatum at a public auction is an appropriate way for Oakland Yacht Club to foreclose the lien. Oakland Yacht Club asks the court to issue an Order for Final Sale in the form of its proposed order. *See* Motion at 7; Proposed Order, ECF No. 22. The Proposed Order would require the U.S. Marshal to sell the Ultimatum at a public sale to take place in the entrance lobby of Oakland Yacht Club, 1101 Pacific Marina, Alameda, California 94501, and establishes procedures for the sale. *See* Proposed Order, ECF No. 22. Oakland Yacht Club would be required to publish notice of the sale for six consecutive days in the San Francisco Daily Journal and permit it to advertise in local papers with the costs of publication added to the compensable administrative expenses. *See id.* ¶¶ 2-3. It also would be allowed to bid up to the amount of its judgment and taxed *custodia legis* expenses at the sale without having to make any deposit. *Id.* ¶ 4.

Oakland Yacht Club's Proposed Order provides practical details such as the location of the sale and arrangements for pre-sale inspections. *See* ECF No. 22. With one exception, the Proposed Order comports with the terms of the Northern District of California's Admiralty Local Rule 9-2, which establishes procedures for the sale of property in actions such as this. The exception is Oakland Yacht Club's proposal that it be permitted to bid up to the amount of its judgment and taxed expenses without paying a deposit. Admiralty Local Rules 9-2(b) provides that "a plaintiff or intervening plaintiff foreclosing a properly recorded preferred mortgage on, or other valid security interest in the vessel may bid, without payment of cash, certified check or cashier's check, up to the

total amount of the secured indebtedness as established by affidavit filed and served by that party on all other parties no later than 14 days prior to the date of sale." Admir. L.R. 9-2(b). The court sees no reason to except Oakland Yacht Club from Admiralty Local Rule 9-2(b)'s notice provision. *See Richmond Bay Marina, LLC v. The Vessel "Relax"*, No. C 13-02978 MEJ, 2013 WL 6699976, at *7 (N.D. Cal. Dec. 19, 2013) (permitting plaintiff to "credit bid" at the public auction so long as it complied with the notice provisions of Admir. L.R. 9-2(b)). Accordingly, the court **RECOMMENDS** the district court issue an order for final sale in the form proposed by Oakland Yacht Club, except that the notice provisions of Admiralty Local Rule 9-2(b) also should apply.

Finally, Oakland Yacht Club asks the court for an order requiring potential creditors of the vessel to intervene in this action within 30 days after confirmation of the sale. *See* Motion at 6. Oakland Yacht Club explains that setting this deadline now would allow it to reduce advertising expenses by including that information in the notice of sale advertisements. *Id.* The court finds Oakland Yacht Club's request to be reasonable and, therefore, **RECOMMENDS** the district court require all claims against the proceeds of the sale other than those of Oakland Yacht Club to be made by intervention pursuant to Federal Rule of Civil Procedure 24(a) and Admiralty Local Rule 8-1 and filed no more than 30 days after the sale is confirmed, as provided in Oakland Yacht Club's Proposed Order. *See* ECF No. 22, ¶ 12.

## CONCLUSION

Based on the foregoing, the court **RECOMMENDS** that the district court **GRANT** Plaintiff's motion for default judgment and enter default judgment against the Vessel Ultimatum, her masts, sails, engine and appurtenances, in the amount of $14,318.90, award Oakland Yacht Club its litigation costs, and *custodia legis* expenses (pursuant to a bill of costs to be filed post-judgment), and allow it to recover the amount of its judgment from the foreclosure of its maritime lien against the Vessel Ultimatum. The court also **RECOMMENDS** that the district court issue an Order for final sale and set a deadline for intervention in the form of the Proposed Order for Final Sale and Setting a Deadline for Intervention filed at ECF No. 22, except that Oakland Yacht Club also be required to comply with the notice of provisions in Admiralty Local Rule 9-2(b) before "credit bidding" in the sale.

1  Any party may serve and file specific written objections to this recommendation within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2); Civil Local Rule 72-3. Failure to file objections within the specified time may waive the right to appeal the District Court's order.

Oakland Yacht Club is directed to serve a copy of this Report and Recommendation on Mustafa Gunan and Sevtap Mimar at the address provided in ECF No. 25.

Dated: May 9, 2014

_____
LAUREL BEELER
United States Magistrate Judge